IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SUHEIL PUREWAL,

     Plaintiff,

v.                             Case No. 17-CV-2595-JTM

T-MOBILE USA, INC.,

     Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on defendant T-Mobile USA, Inc's Motion for Summary Judgment (Dkt. 32) and Memorandum of Law in support (Dkt. 33), in which T-Mobile seeks judgment as a matter of law on plaintiff Suheil Purewal's failure to accommodate claim under 42 U.S.C. § 12101 et seq.[1] Purewal contends that T-Mobile failed under the Americans with Disabilities Act (ADA) to make reasonable accommodations for his multiple sclerosis. T-Mobile argues that Purewal has no actionable claim under the ADA because he cannot establish that he was able to perform the essential functions of the position for which he was otherwise qualified, or that he could be reasonably accommodated in that position without undue hardship to T-Mobile. For the reasons set forth below, the court denies the motion.

**Legal Standard**

---

[1] Purewal's initial Complaint set out three claims for relief, but the parties' Pretrial Order specifies that Purewal intends to pursue recovery only on his ADA failure to accommodate claims. (*See* Dkt. 31, p.5). Purewal makes two separate failure to accommodate claims related to two different job positions, but agrees that because both positions involve similar facts, the claims should be analyzed together. (*See* Dkt. 34, p.42 n.3). For purposes of this Memorandum and Order, the two failure to accommodate claims are thus grouped together and discussed simultaneously.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The moving party need not disprove the opposing party's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

To resist a motion for summary judgment the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the opposing party must come forward with specific facts demonstrating a genuine issue of material fact for trial along with significant supporting evidence for the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the opposing party must do more than just show some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

**Findings of Fact**

The following facts are either undisputed or construed in the light most favorable to Purewal. Purewal began his employment with T-Mobile in October 2010 as a part-time

Retail Sales Associate (RSA). In June 2012, Purewal was promoted to the position of Retail Sales Leader. In May 2013, he was moved to the position of Retail Associate Manager (RAM)[2] at a store in the Zona Rosa area of Kansas City, Missouri. Finally, in 2015, Purewal was promoted to the position of Retail Store Manager (RSM) for a T-Mobile store in Overland Park, Kansas. By all accounts Purewal was a good employee; there were no customer or employee complaints about him during his employment, no complaints regarding his performance at work, and he was not subject to any disciplinary actions.

As an RSM, Purewal was responsible for the operations of the Overland Park store, including managing and coaching a staff of about six employees, covering holes in schedules, attending meetings, hosting and attending conference calls, and maintaining inventory and sales performance. Purewal scheduled himself to work 45-50 hours per week, but usually stayed an extra two hours per day. He worked six to seven days a week depending upon the attendance of other employees, the business of the store, sales and promotions taking place, and scheduled meetings.

In 2011, Purewal was diagnosed with multiple sclerosis (MS). His MS can cause numbness and pain in his face, fingers, and feet. It also causes muscle fatigue and spasms in his legs and back, and impacts his ability to stand, sit, or walk for extended periods of time. The MS impacts Purewal's ability to sleep and forces him to avoid certain foods and temperatures. Between the initial diagnosis and the spring of 2016, Purewal did not

---

[2] The parties throughout the record have used the terms "Retail Associate Manager" and "Retail Assistant Manager" interchangeably and agree that the assigned duties of each position were the same. To the extent the court uses both terms, that usage reflects the parties' understanding.

request any accommodations from T-Mobile due to the MS. In May 2016, however, Purewal requested a leave of absence due to impairment from the MS. T-Mobile granted his request and provided him with a continuous leave of absence pursuant to the Family Medical Leave Act (FMLA).

On July 15, 2016, T-Mobile informed Purewal that his FMLA leave would be exhausted on August 7. Purewal's health care providers had not approved him to return to work by August 7, however, so T-Mobile wrote to Purewal again on August 3, 2016, informing him that his leave had been extended from August 8 through October 9, 2016. Purewal was scheduled to return to work on October 10, 2016.

On September 26, 2016, Purewal's medical provider, Jenny Ravenscroft, drafted a letter to his employer indicating that Purewal was ready to return to work "but only with the following strict limitations." The letter characterized the limitations as "medically necessary," and cautioned that the health provider was "concerned that if the suggestions I am making are not followed, that the patient may not be able to work productively or effectively." The letter then went on to explain:

> Mr. Purewal needs a set, consistent schedule, working no more than 40 hours in any 7 day period. Additionally, I request that for every 2 hours worked, he must have a 10 minute break. The two hours consecutively may include a combination of sitting and standing, but not entirely 2 hours of standing without intermittent sitting. The more controlled the environment for noise, interruptions, etc., the better. His ability to focus can be greatly compromised in a loud atmosphere in which he has a potential to be interrupted numerous times during a business transaction."

Purewal interpreted the "set, consistent schedule" restriction to mean not that he needed to have a schedule where he worked the same number of days and same hours

per day and per week, but that he had to know what days he was working in advance so that he could keep medical appointments and maintain his treatment schedule. Purewal testified that there were situations where an RSM would "inevitably" be interrupted during the course of the day, even when the RSM wasn't physically present. He also indicated that the T-Mobile retail stores continuously played music through a speaker system which had approximately 40 channels, but was typically on top-40 hits or "low chill" music.

T-Mobile maintains a policy that prohibits discrimination based upon an individual's mental or physical disability. T-Mobile's workplace accommodation policy states that it is committed to providing reasonable accommodation to qualified individuals with known disabilities. According to the policy, "[r]easonable accommodation may require an interactive process between the applicant or employee and the Company to identify whether an accommodation is needed and to determine whether [T-Mobile] is able to provide an accommodation without undue hardship." The interactive process can include communications between the employee, the employee's medical provider, the employee's supervisor, HR partners, and possibly experts outside the company that might be necessary to determine whether an accommodation is reasonable. In addition, during the interactive process the employee may be required to provide medical documentation supporting the need for accommodation and/or recommending an accommodation that would enable the employee to perform the essential function of his or her job without undue hardship to the company.

As to simple requests for accommodation, a member of the accommodation team (based in Bellevue, Washington) might make an initial determination regarding whether an employee's request is "reasonable." In most instances, though, T-Mobile acknowledges the question of whether an employee's accommodation request is reasonable should involve communications between an accommodation team member, the employee's manager, and the local human resources representative. Whether an accommodation is granted should be considered on an individual basis.

Jennifer Lamb was T-Mobile's Senior Accommodation Specialist at the pertinent times of Purewal's employment, and managed employee accommodation. With respect to accommodation cases, Lamb worked with employees and their healthcare providers to get necessary medical information and worked with human resources and the employee's manager to determine whether T-Mobile could provide the accommodation. T-Mobile's normal procedure was to send a standard questionnaire to the employee's medical provider to determine whether the employee had a qualifying disability, identify any restrictions that would prevent the employee from performing an essential function of the job, and, if necessary, engage in follow-up questions or communication. With respect to the employee's manager and local HR, T-Mobile's normal procedure was to review an employee's essential job functions, discuss those functions with the manager and local HR, then determine possible accommodation options. Lamb indicated that the final decisionmaker on an employee's accommodation request was the employee's

manager.[3] If the employee could not return to his or her old job due to the accommodation requests, T-Mobile would consider alternative assignments. Lamb's goal with an employee's accommodation requests is to be accurate, thorough, review any relevant documents, speak to the employee's supervisor, and consider all opportunities to get the employee back to work.

Purewal's accommodation request was initially assigned to Lamb. Lamb never spoke directly with Purewal's physicians regarding the meaning of the "set, consistent schedule" restriction. Lamb interpreted the "40 hours per week" restriction to mean that Purewal could not work more than 40 hours in a seven-day week. Lamb did not speak directly to Purewal's health providers regarding that restriction. Lamb interpreted the restrictions on breaks and sitting to mean that Purewal would need a ten-minute break for every two hours that he worked, and that he would need to sit intermittently. She interpreted Ravenscroft's statement related to noise as a restriction, rather than a request, but did not speak directly with Ravenscroft about that restriction.

In an October 3, 2016 email sent to William Etzenhouser, an "Employee Success Partner,"[4] Lamb noted Purewal's requested accommodations of a consistent, set work schedule, limitation to no more than 40 hours per 7-day period, 10-minute break for every two hours worked, allowance of intermittent sitting, and controlled environment for

---

[3] Purewal points out that his supervisor, Michael Laughlin offered conflicting testimony stating that a final decision on accommodation would be made by the accommodations team.

[4] At T-Mobile, the duties of "Employee Success Partner" are similar to those of an HR generalist.

noise and interruptions and indicated "I think the last bullet points can't reasonably be accommodated. There is no way to control a retail environment in the manner requested. I don't see any issue with providing the stool and breaks, but I think that a consistent set schedule probably can't be met without disrupting other staff scheduling. Let me know you(sic) thoughts." Etzenhouser responded "I would agree, schedule/40 hrs and controlled environment are not easy in a retail environment."

Lamb did not have any conversations with Purewal's medical providers regarding the September, 2016 accommodation requests as they related to the RAM or RSM position. Lamb never sent T-Mobile's healthcare provider questionnaire to the medical providers to determine whether Purewal could perform the essential functions of the RSM or RAM position. Etzenhouser admitted in his deposition that information from the medical providers would have been helpful to determine whether Purewal could perform the essential functions of the RAM or RSM positions.

Lamb never inquired of Purewal's physicians whether the restrictions had any kind of temporal limitation, nor did Lamb or Etzenhouser inquire of Purewal whether his restrictions were permanent.

Neither Lamb nor Etzenhouser reviewed other management employees' schedules or spoke with other employees to determine whether their schedules would have been interrupted as a result of the accommodation requests.

A few days after the October 3, 2016 email exchange between Lamb and Etzenhouser, Lamb called Purewal and explained that T-Mobile could not accommodate his medical restrictions in his RSM position at the time and would move forward with

finding him another position. According to plaintiff, he and Lamb did not have any specific discussions as to what restrictions could be accommodated, the length of the restrictions, or the severity of the restrictions.

Subsequent to that conversation, Purewal called his immediate supervisor, Michael Laughlin, and indicated his belief that the restrictions would not affect his job as an RSM. He then asked whether Laughlin believed a Retail Associate Manager role could accommodate the restrictions.

Laughlin responded that Purewal had worked in both positions and knew that Laughlin's expectations of both RSM's and RAM's were the same, so Laughlin did not believe the restrictions could be accommodated even in an RAM role. Laughlin testified that RAM's do not typically work more than 40 hours per week. There is no 40 hour per week minimum written requirement in the job description for the RAM position. RAMs are not allowed to work more than 40 hours per week without permission, but would occasionally work excess hours due to staffing issues or sales.

Lamb indicates she never reviewed any data to determine how many hours per week an RAM works.

Etzenhouser testified that if Purewal did not have to work more than 40 hours per week as an RAM the position would have fit his restrictions "with regard to the time and hour component," but Purewal had additional restrictions, such as those requiring a set, consistent schedule and the need to avoid noise and interruptions, which could not be accommodated in the RAM role.

Laughlin, who was responsible for hiring both RSMs and RAMs, indicated he did not believe he could provide a "set, consistent schedule" to either position because (a) one or the other would need to cover other employee absences due to illness or vacation, and (b) both are expected to have a flexible, rotating schedule to work with all retail sales associates and ensure continuous leadership presence during open hours. He further indicated that thousands of customers visit T-Mobile retail stores and can cause multiple disruptions during any visit, including interruptions requiring an employee to come off a break or stay late on a shift.

Laughlin never reviewed, and had no complete knowledge of the September 2016 restrictions, until he prepared for his deposition in this matter.

Etzenhouser was not aware of any conversations between Lamb and Laughlin regarding the September 26, 2016 letter. Lamb never communicated with Laughlin regarding the scheduling of staff in his district, nor whether T-Mobile could accommodate Purewal's restrictions. Lamb admits that she never had any discussions with Laughlin regarding the accommodation requests, and did not speak to Laughlin about Purewal taking an RAM position.

Laughlin never spoke to Purewal's medical providers regarding the restrictions, and whether they could be accommodated, but agreed that it might be prudent to have further conversations with them to determine whether the restrictions were non-negotiable.

As part of the process of finding Purewal an alternative position, T-Mobile asked him to complete an "alternative placement preference form," which he completed on

October 6, 2016. In his responses, Purewal indicated he was (1) willing to accept a position within 30 miles of his current position, (2) willing to work a minimum of 30 hours per week, and (3) preferred a position paying a minimum of $50,000. Purewal further noted that he could not "be without employment and [would] gladly accept any opportunity."

On October 7, 2016, Purewal's leave of absence was extended to January 11, 2017, while T-Mobile continued searching for an alternative placement. Purewal had a follow-up conversation with his physicians where he advised them that T-Mobile could not accommodate the restrictions, and was advised by the physicians that it was not possible to modify the restrictions because they "wrote those restrictions for a reason, and we can't just take them away."

Lamb discussed with Purewal the possibility of an RSA position, the sales job that he had at the beginning of his employment with T-Mobile. Purewal wasn't interested in that position because of the decrease in compensation. Purewal did indicate that he would be interested in an analyst or other computer-based position he could perform from Kansas City. On October 25, 2016, Lamb emailed Purewal and indicated that she had not found any analyst-type roles for which he met the minimum qualifications. Lamb offered the possibility of Purewal working at a T-Mobile call center in Wichita, Kansas, but Purewal responded that the geographic distance between Wichita and Kansas City made that impossible.

On November 15, 2016, Purewal brought an associate analyst position to Lamb's attention, but she responded that it could not be done remotely. In December, 2016, Lamb and Purewal exchanged correspondence regarding an open Account Services

Representative (ASR) position with Metro PCS, a business unit of T-Mobile. Lamb confirmed that Purewal was qualified, arranged for him to be interviewed, and communicated with his health providers to determine whether the position was in line with his restrictions. Purewal's health care providers confirmed that based on the written job description, Purewal could perform the ASR position within his restrictions.

Subsequently, the hiring manager for the ASR position wrote to Lamb to inform her that the weekly schedule for that position varied and averaged closer to 40 to 50 hours per week, which raised concern the position could violate Purewal's restrictions of no more than 40 hours per week and a consistent, set schedule. Purewal conferred with his health care providers about that fact, who informed him that because the ASR role was "much more flexible than" the RSM role, they were willing to "loosen up the restrictions of not working above 40 hours and having a set schedule." Purewal conveyed his understanding to Lamb that the primary reason for his restriction was to prevent him from having only one day off per week, being unable to take a lunch break, and having to work 12-plus hour shifts, all of which had been common in his RSM position. Lamb then provided the hiring manager's additional information to Purewal's healthcare providers, who again confirmed that he could perform the duties of the ASR position within his restrictions.

Lamb consequently moved forward with arrangements to place Purewal in the ASR position. Unfortunately, the requisition for the ASR position was cancelled in January 2017 due to issues with the budget and local store count. Lamb looked at a similar ASR position at another Metro PCS store, and again confirmed with Purewal's physicians

that he could perform the role within his restrictions. After moving forward with the interview process there, Lamb learned again that the position was not being filled due to budgetary issues.

At some point in January 2017, Purewal asked Lamb about an open operations manager position in Kansas. Lamb responded that because the manager position would have required a promotion to a higher level than his current job, T-Mobile did not consider it a reasonable accommodation.

Ultimately, around February 10, 2017, Lamb and Etzenhouser informed Purewal that T-Mobile could not identify a position which he could perform in line with his restrictions, and that the company was separating him from his employment.

T-Mobile maintains approximately 22 stores in the Kansas City metropolitan area. Between September 1, 2016 and May 1, 2017, there were three open RSM positions and four open RAM positions available within the Kansas City east and west districts. Lamb never contacted Laughlin regarding those available positions. According to the company's hours worked report, there were multiple stores where RAMs worked less than 40 hours per week during an 18-month period.[5] At the Missouri – Independence Center location, the RAM never worked more than 40 hours per week over an 18-month time period. At the Missouri-Lee's Summit location, the RAM worked more than 40 hours per week on only two occasions in an 18-month period. There was an open RAM position at the Missouri I-70 and Highway 40 location; during an 18-month period, that RAM

_____

[5] The same report also shows that many RAMs had weeks where they worked more than 40 hours.

worked more than 40 hours per week on 12 occasions, primarily during the holiday season. Etzenhouser admitted that based upon the company's hours worked report, there were RAM positions that could have satisfied Purewal's 40-hour per week accommodation.

**Analysis**

The ADA provides "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a). The term "qualified individual" is defined as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."

Discrimination against a qualified individual on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity," or "denying employment opportunities to [an employee] who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make a reasonable accommodation to the physical or mental impairments of the employee or applicant." *Id.* at § 12112(b)(5)(A) – (B).

A prima facie case for failure to accommodate under the ADA requires Purewal to show "'(1) that he was an individual who had a disability within the meaning of the statute; (2) that [T-Mobile] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ….; and (4) that [T-Mobile] refused to make such accommodations.'" *Bones v. Honeywell Intern., Inc.*, 223 F.Supp.2d 1203, 1218 (D. Kan. 2002) (quoting *Spielman v. Blue Cross and Blue Shield of Kansas, Inc.*, 33 Fed. Appx. 439, 443, 2002 WL 524549 (10th Cir. 2002)).

Failure to accommodate claims, unlike other ADA claims, do not require direct or circumstantial evidence of discriminatory intent. *Punt v. Kelly Servs.*, 862 F.3d 1040, 1048 (10th Cir. 2017). Consequently, Purewal's claims are subject to the modified burden-shifting analysis used by the Tenth Circuit to evaluate such claims. *Id.* at 1050. The modified framework is "a useful structure by which the district court, when considering a motion for summary judgment, can determine whether the various parties have advanced sufficient evidence to meet their respective traditional burdens to prove or disprove the reasonableness of the accommodations offered or not offered." *Id.* (quoting *Smith v. Midland Brake,* 180 F.3d 1154, 1178 n.12 (10th Cir. 1999)).

The Tenth Circuit's burden-shifting framework requires Purewal to make an initial showing that (1) he is disabled, (2) he is "otherwise qualified," and (3) he requested a plausibly reasonable accommodation. *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012). "Once the employee produces evidence sufficient to make a facial showing on … [his] prima facie case, the burden of production shifts to the employer to present evidence either (1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2)

establishing an affirmative defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Smith*, 180 F.3d at 1179.

"'If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of her prima facie case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements.'" *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (quoting *Smith*, 180 F.3d at 1179).

T-Mobile acknowledges that Purewal was disabled pursuant to the statute, and there is no reasonable dispute that T-Mobile had notice of Purewal's disability at the time that he took FMLA leave. The court therefore focuses its inquiry on whether Purewal was otherwise qualified, whether he requested a plausibly reasonable accommodation, and whether T-Mobile refused to make such accommodation.

> A.    *Did Purewal request a plausibly reasonable accommodation that would have allowed him to perform the RSM or RAM roles?*

For purposes of a motion for summary judgment, the relevant inquiry to determine whether an employee is "qualified" is whether the employee has provided evidence that he could be reasonably accommodated – including a reasonable reassignment – that is sufficient to warrant submission to a jury. *Woodman v. Runyon,* 132 F.3d 1330, 1340 (10th Cir. 1997). "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact" that must be determined "on the facts of each case taking into consideration the particular individual's disability and employment

position." *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050-51 (internal quotation marks and citations omitted).

"[A]n employee's request to be relieved from an essential function of her position is not, as a matter of law, a reasonable or even plausible accommodation.'" *Punt*, 862 F.3d at 1051 (quoting *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1123-24 (10th Cir. 2004)). Otherwise, reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modification of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1161 (10th Cir. 1999) (quoting 42 U.S.C. § 1211(9)).

Here, T-Mobile principally argues that the ability to work in excess of 40 hours per week on a shifting, unpredictable schedule were essential functions of the RSM and RAM roles, and that no accommodation could have accommodated Purewal's restrictions in that regard. Further, T-Mobile contends that even if it could have accommodated the hour and schedule requirements, Purewal's other restrictions regarding the limitation of noise and interruptions would have interfered with essential managerial functions. The court finds that genuine issues of fact exist with respect to these issues.

The ADA's implementing regulations define "essential function" as "the fundamental job duties of the employment position the individual with a disability holds or desires." *Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 915 (10th Cir. 2004) (quoting 29 C.F.R. §1630.2(n)(1)). "'Determining whether a particular function is essential is a

factual inquiry.'" *Id.* (quoting *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003)). The finder of fact must consider the employer's judgment regarding the functions of the job it deems essential, including those contained within a written job description. *Id.* (citing 42 U.S.C. § 12111(8)). But, an employer's mere inclusion of a job function or condition of employment in a written job description does not necessarily make the function essential. *Id.*

"Evidence of whether a particular function is essential to a job includes (but is not necessarily limited to) (1) the employer's judgment as to which functions are essential, (2) written job descriptions prepared before advertising or interviewing applicants for the job, (3) the consequences of not requiring the incumbent to perform the function, and (4) the current work experience of incumbents in similar jobs." *Wells v. Shalala*, 228 F.3d 1137, 1144 (10th Cir. 2000) (citing 29 C.F.R. § 1630.2(n)(3)). The court will not second guess an employer's judgment when the "description is job-related, uniformly enforced, and consistent with business necessity." *Mason v. Avaya Communications, Inc.*, 357 F.3d 1114, 1119 (10th Cir. 2004) (citing *Davidson,* 337 F.3d at 1191); *see also Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 993 (10th Cir. 2001) ("The question of whether a job requirement is a necessary requisite to employment initially focuses on whether an employer actually requires all employees in the particular position to satisfy the alleged job-related requirement."). If performance of the function is not uniformly enforced, however, "'the inquiry will then center around whether removing the function would fundamentally alter the position.'" *Davidson v. America Online, Inc.*, 337 F.3d 1179, 1191 (10th Cir. 2003) (quoting *Milton*, 53 F.3d at 1124)).

T-Mobile urges that Purewal has not introduced any evidence, other than his own self-serving testimony, that contradicts the testimony of its retail store district manager, human resources professional, and accommodations specialist on the effect of hours worked, scheduling flexibility, and avoidance of noise and interruptions in a store management position. The Tenth Circuit has stated its reluctance to allow employees to define the essential functions of their positions solely based on their personal viewpoint and experience. *See Mason*, 357 F.3d at 1122. Purewal's evidence, however, is not limited to his personal characterization of his position.

In this instance, T-Mobile's own internal policies indicate that at least with respect to the RAM position, the ability to work in excess of 40 hours per week was not an "essential" function of the job. The record evidence is that the written job description for an RAM did not specify work in excess of 40 hours per week, and RAMs were not allowed to work more than 40 hours per week without permission. RAMs did occasionally work overtime, but the overtime hours worked by each RAM employed by T-Mobile varied widely from store to store and from season to season. T-Mobile's internal reports of hours worked shows that certain RAMs worked overtime very infrequently, indicating that any sort of overtime "requirement" was not uniformly enforced. There is no evidence in the record that removing any requirement of overtime or a shifting schedule would fundamentally alter the position.

The record further shows that T-Mobile did not engage in any sort of interactive process with respect to determining whether Purewal's restrictions regarding hours per week and a set, consistent schedule could have been accommodated in either his current

RSM role or the RAM role. For example, when T-Mobile considered reassigning Purewal to an account services representative position and learned that the weekly schedule varied and averaged closer to 40 to 50 hours per week, Purewal conferred with his healthcare providers who confirmed they were willing to loosen up restrictions of not working above 40 hours and having a set schedule. In contrast, T-Mobile never reached out to Purewal's healthcare providers regarding flexibility in their restrictions for the RAM or RSM role, or other accommodations that could be made to keep Purewal in his RSM position, nor did T-Mobile's accommodation specialist reach out to Purewal's supervisor to see if accommodations could be made to keep Purewal in a managerial retail position.

The ADA imposes upon employers a good-faith duty "to engage [with their employees] in an interactive process to identify a reasonable accommodation." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015). The duty is triggered when a qualified employee informs his employer of a disability and communicates a desire for accommodation. *See Valdez v. McGill*, 462 Fed. Appx. 814, 819 (10th Cir. 2012) (citing 29 C.F.R. §1630.2(o)(3); *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998)); *Dinse v. Carlisle Foodservice*, 541 Fed. Appx. 885, 890 (10th Cir. 2013). The "interactive process encourages employers and employees to work together to identify the employee's precise limitations and discuss accommodations which might enable the employee to continue working," and requires employers to "make a reasonable effort to explore the accommodation possibilities with the employee." *Id.* (internal citations omitted). *See also Nebeker v. Nat'l Auto Plaza*, 643 Fed. Appx. 817, 824 (10th Cir. 2016) ("The

federal regulations implementing the ADA describe an 'informal, interactive process' through which employer and employee 'identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171 (10th Cir. 1999)). An employer who fails to engage in a sufficient interactive process "risks not discovering a means by which an employee's disability could have been accommodated and thereby increases the chance that it will be found to have violated the ADA." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 100 (2d Cir. 2009) (citing *Mengine v. Runyon*, 114 F.3d 415, 420-21 (3d Cir. 1997)).

"Despite its importance, however, the interactive process is only a means to an end. To recover under the ADA, a plaintiff must show 'a reasonable accommodation was possible.'" *Valdez*, 462 Fed. Appx. at 819 (quoting *Smith*, 180 F.3d at 1174). "[A]n employer is not required to engage an employee in a futile interactive process where … no reasonable accommodation was possible." *Id.* Further, an employer "will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow [him] to perform the essential functions of the position." *Jacobs*, 780 F.3d at 581. Purewal therefore retains the essential burden to identify a reasonable accommodation that would have permitted him to satisfy the essential functions of either the RSM or RAM positions. *See Helpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464-65 (4th Cir. 2012)); *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 100-01 (2d Cir. 2008) (holding "that an employer's failure to engage in a sufficient interactive process does not form the basis of a claim

under the ADA and evidence thereof does not allow a plaintiff to avoid summary judgment unless she also establishes that, at least with the aid of some identified accommodation, she was qualified for the position at issue.").

T-Mobile's HR specialist acknowledged that if Purewal did not have to work more than 40 hours per week, the RAM position would have accommodated his restrictions with respect to the time and hour component. That acknowledgment in combination with Purewal's good employment history as both an RSM and RAM is sufficient for Purewal to meet his burden at this stage to show that he was qualified for those positions and could have performed them with reasonable accommodation. The evidence at this stage shows that during the relevant timeframe there were three open RSM positions and four open RAM positions within the Kansas City districts, and that the RAMs at those stores may have rarely worked more than 40 hours per week.

The Tenth Circuit has held that evidence of an employer's failure to participate in an interactive process should be considered with respect to whether an accommodation is sufficiently reasonable to survive summary judgment. *See Yinger v. Postal Presort, Inc.*, 693 Fed. Appx. 768, 774 (10th Cir. 2017). Here, T-Mobile has acknowledged that it did not engage in any sort of interactive process with respect to the RSM or RAM roles, but claims that an interactive process with respect to those roles would have been futile, and that its consideration of alternative jobs for Purewal in non-retail positions was sufficient to fulfill its duty. Reassignment to another position is only one type of reasonable accommodation, however, and the fact that T-Mobile considered assigning Purewal to a non-retail position does not establish as a matter of law that T-Mobile adequately

considered whether it could accommodate Purewal in the role that he was currently in or desired, as required by the ADA. *See* 42 U.S.C. § 12111(8) ("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.").

Further, the ADA's requirement of an interactive process applies to reassignment as well as accommodation requests. *See Smith v. Midland Brake*, 180 F.3d at 1171-72. The court acknowledges that T-Mobile did work with Purewal in an attempt to find him an alternative position, but it clearly did so from the viewpoint that Purewal was not qualified or capable, even with accommodation, of performing either his RSM position or an RAM position. Consequently, T-Mobile's attempts to reassign Purewal do not establish that it followed the ADA's interactive process requirements as a matter of law.

The court further notes that when an employer has multiple reasonable accommodations to offer, the preferred option is an accommodation that would keep the employee in his current position. Reassignment is a last resort. *Smith v. Midland Brake*, 180 F.3d at 1170-71. In *Smith*, the parties agreed that no reasonable accommodations were available that would have kept Smith in his current job. *Id.* at 1171. In contrast, the parties here disagree as to whether there were reasonable accommodations T-Mobile could have made to keep Purewal in his RSM position, or move him to the lower position of RAM. Purewal argues that the "set, consistent" schedule restriction written by his providers was really an attempt to ensure that he could make and keep medical appointments. "A

modified work schedule and leave for medical treatment may be a reasonable accommodation." *Nebeker v. Nat'l Auto Plaza*, 643 Fed. Appx. 817, 824 (10th Cir. 2016).

Viewing the record in the light most favorable to Purewal, the court finds sufficient evidence in the record that Purewal proposed plausibly reasonable accommodations that would have allowed him to perform either the RSM role or RAM role, that he was otherwise qualified for both roles, and that T-Mobile refused to make those accommodations. Because Purewal has established a prima facie case of failure to accommodate, the burden shifts to T-Mobile to either conclusively rebut one of the elements of Purewal's case, or establish an affirmative defense.

B.      *Can T-Mobile rebut Purewal's prima facie case?*

T-Mobile generally argues that it did not have a duty to reach out to Purewal's medical providers directly because Purewal should have done that work himself. In *Smith*, the Tenth Circuit found under similar circumstances that an employee's failure to provide a medical release did not provide a basis for summary judgment in favor of the employer. The court noted that while there are some cases where an employee's failure to provide records would be unreasonable and break down the interactive process, there are other cases where it might be appropriate for the employer to affirmatively seek out a release from the employee, or tell the employee what is required before the employee is reassigned. 180 F.3d at 1173-74. If there is a genuine dispute about those facts, that genuine dispute precludes summary judgment.

Here, T-Mobile did not inform Purewal that it needed further information or clarification regarding certain restrictions, such as the restriction on noise and

interruptions. Purewal contends the only communication he received from T-Mobile was that he needed a full release, consequently he asked his physicians about the possibility of wiping out the restrictions entirely – which they declined to do. A reasonable jury could conclude that if T-Mobile considered accommodating Purewal in his current position, it would have reached out to his medical providers and asked those questions – particularly in light of T-Mobile's failure to follow its own policy of sending a standard questionnaire to Purewal's medical providers. *See Smith*, 180 F.3d at 1174 ("without deciding this record-intensive inquiry today, we note only that summary judgment would be premature if there is a genuine dispute regarding whether Midland Brake participated in good faith in attempting to secure a reassignment position for Smith as part of its duty to offer a reasonable accommodation….").

T-Mobile relies on *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617 (10th Cir. 1998) for the proposition that an "employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide a reasonable accommodation." *Id.* at 619. In *Templeton*, however, the court was addressing an employee's affirmative refusal to allow her medical provider to release information that her employer had requested. In contrast, T-Mobile never made any specific requests of Purewal or his medical providers for further information or clarification of the September 26, 2016 restrictions. The court disagrees with T-Mobile's characterization of the restrictions as "unambiguous," finding that particularly with respect to the restrictions on noise and interruptions, a reasonable person could construe those as requests or preferences open to interpretation rather than hard limitations.

The court further disagrees that to the extent the restrictions were open to interpretation, that it was Purewal's sole responsibility to obtain clarification. While *Templeton* and cases cited therein suggest an employee's failure to provide medical information upon request can cause a breakdown in the interactive process, the opinion does not go so far as to suggest an affirmative duty on the part of the employee, to the exclusion of all responsibility on the part of the employer, to provide all information the employer could possibly need to make its decision on accommodation. Indeed, in this instance Purewal knew nothing other than T-Mobile had determined, without discussion, that it was impossible to accommodate him in either the RSM or RAM positions.

Because a reasonable factfinder could conclude that Purewal's restrictions could be interpreted in a number of ways, the court finds a genuine issue of fact as to whether T-Mobile adequately participated in an interactive process with respect to those conditions. The court is mindful of T-Mobile's argument that it did not need to engage in any interactive process because it would have been futile. But, the court finds that the record viewed in the light most favorable to Purewal shows that if T-Mobile had engaged in some discussion with Purewal's medical providers, it may have found some accommodations were possible to keep Purewal in the RSM or RAM position.

To the extent T-Mobile contends it would have been an undue hardship to keep Purewal in his RSM or an RAM position, the court finds insufficient evidence in the record to award summary judgment on that point. For purposes of accommodation under the ADA, factors relevant to the existence of undue hardship include:

(i)   The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

(ii)  The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

(iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type, and location of its facilities;

(iv)  The type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v)   The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

29 C.F.R. § 1630.2(p)(2). Other than the fact that T-Mobile is a nationwide company with 22 stores in the Kansas City area alone, there is little evidence in the summary judgment record directly addressing the issue of undue hardship. There is no evidence that T-Mobile's accommodation specialist had any conversations with Purewal's immediate manager or other local employees to determine whether accommodating Purewal's limitations would drastically impact the functionality of the retail environment either in the store where Purewal worked as RSM, or in any of the stores with an available RAM position.

In *Yinger*, the Tenth Circuit held that shifting or inconsistent explanations for failing to accommodate an employee's ADA request can create genuine issues of fact that preclude summary judgment. 693 Fed. Appx. at 775. In this case, it appears that T-Mobile's accommodation specialist made a decision that it was not possible to accommodate Purewal in his position as RSM automatically, without consulting

Purewal's direct supervisor, any local human resources representative, Purewal's medical providers, or Purewal himself. This runs contrary to T-Mobile's stated policy regarding its interactive process with respect to ADA accommodation requests as well as the testimony of its corporate representative regarding the process to determine whether an employee's accommodation request is reasonable. T-Mobile deviated from its typical practice of sending a questionnaire to Purewal's medical provider to engage in necessary follow-up. T-Mobile also offered different responses regarding the ultimate decision-maker on Purewal's accommodation request. Lamb, the accommodation specialist, testified the final decision was made by the employee's manager. In contrast, Purewal's manager, Michael Laughlin, testified that final decisions on accommodations were made by the accommodations team. T-Mobile contends that this finger-pointing is irrelevant because both Lamb and Laughlin concluded that Purewal's requests could not be accommodated in either the RSM or RAM position. A reasonable factfinder, however, could find that explanation dubious given the fact that Laughlin testified he had never seen the September, 2016 recommendations in their entirety until the time of his deposition, and the lack of evidence in the record that Lamb and Laughlin had any conversations regarding Purewal's accommodation requests prior to this case.

Given the lack of contact between Lamb and the more local manager, Laughlin, it would be reasonable to conclude that undue hardship upon the local stores was not a controlling factor in T-Mobile's decision not to accommodate Purewal's requests. Further, the record at this stage is devoid of any further evidence that T-Mobile would have suffered undue hardship in the event that it had to accommodate Purewal's limitations.

The court concludes that genuine issues of fact exist with respect to T-Mobile's challenges to Purewal's evidence as well as T-Mobile's affirmative defenses that preclude summary judgment.

**Conclusion**

"After considering the submissions by both sides on summary judgment, if there remains genuine evidence supporting each element of the employee's prima face case and, if need be, disputing the employer's affirmative defenses, summary judgment for the employer should be denied and the matter must proceed to trial." *Smith v. Midland Brake*, 180 F.3d at 1179. Here, the record demonstrates genuine evidence supporting each element of Purewal's prima facie case: 1) he was an individual with a disability within the meaning of the statute; 2) T-Mobile had notice of his disability; 3) with reasonable accommodation he could have performed the essential functions of the RSM or RAM positions; and 4) T-Mobile failed to make those accommodations. Purewal has also shown sufficient evidence that would refute T-Mobile's affirmative defense of undue hardship. Under those circumstances, this court declines to grant summary judgment in T-Mobile's failure. T-Mobile's Motion for Summary Judgment is therefore DENIED.

IT IS SO ORDERED.

Dated this 30th day of September, 2019.

/s/ J. Thomas Marten
The Honorable J. Thomas Marten
United States District Court